**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 06-41218-MSH |
| JOHN PAUL SCHEFFER | ) | |
| MARTHA M. SCHEFFER | ) | |
| Debtors. | ) | |
| ARA ERESIAN, | ) | |
| Plaintiff | ) | Adv. Pro. No. 11-4008 |
| v. | ) | |
| JOHN PAUL SCHEFFER | ) | |
| MARTHA M. SCHEFFER, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGEMENT AND REQUEST FOR REIMBURSEMENT OF ATTORNEY'S FEES**

This is an adversary proceeding in which the plaintiff seeks an order revoking the discharges of the defendants who are the debtors in the main case.  Before me is the defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Request for Reimbursement of Defendants' Attorney's Fees, which the plaintiff opposes.

**Background**

This adversary proceeding is but one in a long list of legal proceedings initiated by Ara Eresian in a misguided and obsessive crusade to avenge the October 1990 foreclosure of property previously owned by Mr. Eresian's mother located at 62 Westwood Road, Shrewsbury, Massachusetts.  Mr. Eresian, who is a law school graduate but is not licensed to practice in the

1

Commonwealth of Massachusetts, apparently grew up in the property and today lives nearby on the same street. The defendants, who are the debtors in the main case, were not involved in the foreclosure but have the misfortune of being the current owners and residents of the property.

The debtors commenced the main case by filing a joint Chapter 13 petition on July 10, 2006. On January 9, 2007, their case was converted to one under Chapter 7. The debtors did not list Mr. Eresian as a creditor in the schedules attached to the petition. Mr. Eresian, however, was not one to let his lack of creditor status prevent him from interfering with the administration of the debtors' bankruptcy case. For example, in October 2008, Mr. Eresian, describing himself as an "interested party," objected to the Chapter 7 trustee's notice of intention to abandon an action against Robert Sawtelle, who is Martha Scheffer's half-brother. Mr. Eresian claimed he wanted to purchase the cause of action from the estate in order to pursue it himself. My predecessor, Judge Joel B. Rosenthal, overruled Mr. Eresian's objection on the grounds that he lacked standing to object to the trustee's abandonment. A few months later, AME Realty Corp., of which Mr. Eresian is the president, filed a Notice of Transfer of Claim indicating that it had purchased the claim of Peterson Oil Service, Inc. against the debtors. Shortly thereafter, AME transferred a twenty-five percent interest in the claim to Mr. Eresian who then filed a series of baseless and ultimately unsuccessful objections to the claims of other creditors.[1] When the Chapter 7 trustee

---

[1] For example, Mr. Eresian objected to the claim of Cavalry Portfolio Services on the grounds that it was neither the original holder nor the assignee of the claim even though Cavalry had attached to its proof of claim a copy of a bill of sale reflecting the assignment of the claim to it. Similarly, Mr. Eresian objected on the same basis to the claim of Credit First, N.A. even though Credit First was the original holder of the claim. His unsuccessful objection to the claim of Pembroke Waterproofing, Inc. was predicated on speculation and hearsay that Pembroke had breached a contract with the debtors. Mr. Eresian appealed the orders on his various objections to claims but the appeals were dismissed by Judge Rosenthal pursuant to LR, D. Mass. 203. Mr. Eresian appealed the dismissals to the United States District Court for the District of Massachusetts. The

filed a notice of intent to abandon the property at 62 Westwood Road, Mr. Eresian objected, claiming that the property was not and never had been property of the bankruptcy estate while simultaneously seeking to compel the trustee to sell him the property for $20,000. Judge Rosenthal overruled Mr. Eresian's objection to the abandonment and denied his request to compel the trustee to sell the property to him. Undeterred, Mr. Eresian, claiming he had standing by virtue of a right of inheritance in the Westwood Road property, filed an adversary proceeding (09-4149) against the Chapter 7 trustee seeking a declaration that the property was not and never had been property of the bankruptcy estate. The adversary proceeding was dismissed on the trustee's motion. Mr. Eresian appealed to the United States District Court for the District of Massachusetts which dismissed the appeal. Mr. Eresian appealed the district court's order to the United States Court of Appeals for the First Circuit where it is pending. Mr. Eresian's mother, Evelyn Eresian, in her capacity as the trustee of the trust that had previously owned the Westwood Road property, filed her own adversary proceeding (09-4166) against the Chapter 7 trustee seeking the same declaration. It too was dismissed on the trustee's motion as was the appeal to the district court. That dismissal is also on appeal to the First Circuit Court of Appeals.

This adversary proceeding was instituted by Mr. Eresian on January 14, 2011 with a complaint against the debtors seeking revocation of their discharges which had entered exactly one calendar year earlier on January 14, 2010. In his complaint Mr. Eresian alleges fraud by the debtors in connection with their schedules of assets and liabilities and their statement of financial affairs. Specifically, Mr. Eresian avers that the debtors misrepresented in their amended schedules that John Scheffer was unemployed and also that they concealed Mr. Scheffer's interest

---

district court consolidated the appeals and ultimately dismissed them due to Mr. Eresian's failure to timely file his appellate brief.

in and income derived from a business known as Compsultants. Mr. Eresian's allegations of fraud are not averred with the particularity required by Fed. R. Bankr. P. 7009. His allegations are based on the fact that he had driven by the debtors' residence and had seen large boxes on their front porch. He speculates, without any evidence whatsoever, that the boxes contain furniture and computers. Relying on his experiences growing up in the house at 62 Westwood Road, Mr. Eresian alleges that the debtors must have greater income than what they have reported in their bankruptcy schedules in order to maintain their household. Mr. Eresian acknowledged that he had hired a private investigator to investigate the debtors.

Mr. Scheffer filed an affidavit in support of the debtors' motion to dismiss in which he stated that he had not received any income from Compsultants before November 2010 (well after the discharge had entered) and that he had not fraudulently concealed "any viable interest in the trade name 'Compsultants' or fraudulently concealed any material income from employment."[2] The debtors have sued Mr. Eresian in state court for harassment.

**Discussion and Conclusion**

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor," *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367. 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007). Debtors who are not honest in their dealings with the court may find their discharges denied or revoked.

Section 727 of the Bankruptcy Code, 11 U.S.C. § 727, provides in relevant part:

> (d) On request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a)

---

[2] I have not relied on Mr. Scheffer's affidavit in reaching my decision and thus do not treat the defendants' motion as one for summary judgment. Fed. R. Bankr. P. 7012(b), incorporating Fed. R. Civ. P.12(d).

4

>of this section if—
>
>(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;....

Revocation of a discharge is an extraordinary measure and as a result § 727(d) "should be construed liberally in favor of the debtor and against those objecting to discharge. *In re Gillis*, 403 B.R. 137, 144 (B.A.P. 1st Cir. 2009). The party seeking revocation of a discharge has the burden of proving all of the facts upon which revocation is conditioned by a preponderance of the evidence. *Id.* at 145. To meet this burden, the plaintiff must demonstrate that

>(1) the debtor obtained the discharge through fraud; (2) the creditor possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and (3) the fraud, if known, would have resulted in denial of discharge under § 727(a).... The plaintiff must also show that the debtor obtained a discharge by committing actual fraud or fraud in fact, such as the intentional failure to schedule an asset of the estate.

*Id.*

As a threshold matter, only those parties enumerated in §727(d) may seek revocation of a discharge. Although a creditor is among the parties listed, not every creditor qualifies. For example, an individual may not purchase a claim for the purpose of objecting to discharge or otherwise to impede the proper administration of a bankruptcy case. "The right to object to a debtor's discharge is not a marketable commodity which may be purchased by one party from another in order to inflict further punishment and discomfort upon the debtor." *In re Beugen,* 1991 WL 54864 at *7 (9th Cir. 1991). "As a general matter, it is perfectly legitimate to buy and sell claims against a bankrupt estate.… [The] continued and relentless harassment … for the sole purpose of inflicting punishment and discomfort, is not, by any means, a legitimate use of the judicial process" *Id.* (Internal quotation marks omitted). An assignee who acquires a claim for

an improper purpose should not be allowed to steps into the shoes of the assignor. *In re Geriatrics Nursing Home, Inc.,* 195 B.R. 34, 38 (Bankr. D.N.J. 1996).

I find that Mr. Eresian purchased the Peterson Oil claim in order to gain standing so he could more effectively continue his campaign of harassment against the debtors, the unlucky owners of his childhood home. I also find that Mr. Eresian's complaint does not comply with the pleading requirements of Fed. R. Bankr. P. 7009 or the Supreme Court's directive that a "complaint must contain sufficient factual matter, accepted as true, to state claim for relief that is plausible on its face." *Bell Atlantic v. Twombley*, 550 U.S. 544, 555 127 S. Ct 1955, 1965, 167 L.Ed.2d 929 (2007). Accordingly, the debtors' motion to dismiss will be allowed.

Mr. Eresian has exhibited a pattern of behavior that any reasonable person would find shocking. He has needlessly multiplied litigation in this Court and has saddled the debtors with the need to defend their discharges a year after they were granted. Although I am mindful that my inherent power to shift attorneys' fees "should be used sparingly and reserved for egregious circumstances," it is appropriate to award fees when "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.A.C., Inc. v. Cooperative de Seguros de Vida de Puerto Rico*, 563 F.3d 1, 6 (1st Cir. 2009) (internal quotation marks and citations omitted). Mr. Eresian's conduct warrants his being required to pay the debtors' attorneys' fees in connection with this

[Remainder of page left blank]

adversary proceeding. The debtors' attorney shall file an affidavit of fees incurred in connection with this adversary proceeding within 30 days from the date of this Memorandum. Further proceedings on fees will be initiated as necessary.

A separate order will issue.

Dated: May 25, 2011                                          By the Court,


                                                             _____
                                                             Melvin S. Hoffman
                                                             U.S. Bankruptcy Judge